Rebb *v.* East Tenn., Va. & Ga. Railway Co.

Though attempting to couple cars when the engine is running at a speed of fifteen miles an hour is apparently not only dangerous but reckless, yet if it be true in the experience of engineers and railroad men that it is safe provided the engine is properly managed, and if the failure in question resulted solely from the fault of the engineer in manipulating the engine, the high speed will be no obstacle to a recovery by the car coupler for a personal injury sustained by him in making the attempt. Though to non-experts its truth would seem in a high degree improbable, if not impossible, yet there being direct and positive evidence tending to support the theory of safety, the court erred in granting a nonsuit.                          *Judgment reversed.*

Simmons, J., concurring *dubitante.*

July 20, 1891.

Negligence. Railroads. Nonsuit. Before Judge Van Epps. City court of Atlanta. September term, 1890.

Rebb sued for damages. A nonsuit was granted, and he excepted. The evidence tended to show as follows:

At the time of the injury Rebb was in his eighteenth or nineteenth year, and was in the employment of the defendant as car-coupler, to which position he had been appointed that evening. For eight days previously he had been serving as switchman, and this

was his only experience in railroad work; but he had worked ever since he was a child, was the equal of other boys of his age, and got as much wages. Part of his duty was to couple cars to the engine with which he was working, and a cab was to be coupled to it. He and the conductor (his brother), by direction of the latter, had chocked up this cab with links and pins to hold it in place, because there was no brake on it and it was on a steep down grade. Some cars were on the same track below. The conductor told Rebb to couple the car, and went off, the car then being perfectly still. When the engine came up, Rebb took the proper position, on the foot-board at the back of the tender; and the engine backed very slowly at about the proper rate to make the coupling, and touched the cab, causing it to roll and knock away the chocks. Rebb failed to make the coupling, and the engine followed the rolling cab with Rebb still on the foot-board. Running about eight miles an hour, the engine again reached the cab, and Rebb again tried and failed to make the coupling. Still the engine followed the cab and caught it while going about twelve miles an hour, and again Rebb tried and failed to make the coupling. The engine continued to follow and while running about fifteen miles an hour caught the cab, and Rebb again tried to make a running coupling, holding to a rod put on the engine for the purpose, and with a lantern on his arm. The engineer saw he was running on the cab, reversed the engine and put on the brake, causing a sudden jerk which threw Rebb upon the track, and the engine cut off his leg. He gave no signal to the engineer at this time, and the engineer gave him no notice that he was going to make a jerk. Coupling is a dangerous business, but Rebb did not know this before he was hurt; he had seen others do it, and had seen standing and running couplings made

in the yard; to attempt to couple a car when running is more dangerous, he now thinks, than when still, but he did not then think so.    At a former trial he testified that it was extremely dangerous at fifteen miles an hour, but he would as- soon be killed one way as another; and he understood the making of that running coupling to be a part of his duty, and did it on his own motion.    He did not know, but had heard, of some getting their hands hurt in coupling.    He called to the engineer to come back after the cab started, so that he could make the running coupling.    The engineer had to run faster than the cab to catch it, and then check speed a little so as not to strike it too hard, but would not have to give a sudden jerk.    Rebb had time, while attempting to couple, to signal the engineer to stop, and the engineer would have stopped if he had signalled. Running couplings were and have to be frequently made; the coupler would properly remain on the foot-board, holding on with one hand and having the stick in the other so that he could raise the link and place it in the car going from him; and the engineer's duty was to control the engine in such manner and with such speed as to reach the car without any violent striking of it or friction, and the coupling could be made easily and readily. To avoid sudden jerks or striking heavily on the car approached, the engine should be handled by controlling the throttle and reversing the lever, and by the brake; "by a proper management of it, it could be avoided."    A coupler on the foot-board, seeking to make such a coupling, cannot see anything to indicate danger.    If a competent engineer is running an engine after a running car, the engine can be controlled so as to reach the car with a very light touch, or so as to hit it severely.    If the engine just touches it, and it is properly chocked, it will not knock it off the chocks; if it does, it shows that it was improperly

chocked. A car cannot be chocked with a link-pin laid across the rail, on account of the flange, but the pin should be put in endwise. Rebb supposed wood would hold the car-wheels better than iron pins.

HOKE & BURTON SMITH and SIMMONS & CORRIGAN, for plaintiff.

DORSEY, BREWSTER & HOWELL and A. O. BACON, for defendant.