JOHN H. TOWNER, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 30, 1893.

1. **Negligence:** UNCOUPLING CARS: CONTRIBUTORY NEGLIGENCE: BRAKEMAN AS CONDUCTOR. In the absence of the conductor, the brakeman was in charge of a train engaged in switching near a switchhead, and the train was moved on his signals. After setting the cars in motion and observing their rate of speed, he made one attempt to uncouple and desisted, and then, without ordering or signaling a slowing up, again attempted to uncouple when he knew that to do so involved

the necessity of his going with the cars at their rate of speed. There was no emergency or necessity existing requiring such action. He was killed, and his body was found on one of the main rails about fifty or sixty feet from where he entered the track. *Held:*—

(1) He was guilty of contributory negligence such as to defeat a recovery by his representative though there was evidence tending to show his foot was caught in the unblocked place between the guard and the main rail.

(2) Whether he could or could not readily and quickly pull the coupling pin is immaterial, as, in either event, he was guilty of negligence in remaining between the cars going at such rate for such distance and until he reached the guardrail.

2. ———: SPEED OF TRAIN: ORDER: RULES. The question of negligence in any particular case must be governed by the facts and circumstances which pertain to the case as made, and the facts that deceased regulated the speed of the train by his orders, and in violation of the rules of the company went between the moving cars, are elements of contributory negligence. (*Waldhier Case,* 87 Mo. 37, *and other cases distinguished.*)

*Appeal from the Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

REVERSED.

*Elijah Robinson,* for appellant.

The plaintiff was guilty of contributory negligence in going between cars while they were in motion. *Williams v. Railroad,* 43 Iowa, 396; *Marsh v. Railroad,* 56 Ga. 274.

*Albert Young* and *W. A. Alderson,* for respondent.

Instructions 1, 2 and 4 declared the law in the exact language of the supreme court in the leading "guardrail case" of this state, instructions 1 and 2 being copied from that case. *Huhn v. Railroad,* 92 Mo. 440; *Soeder v. Railroad,* 100 Mo. 673–682.

ELLISON, J.—This action was instituted by plaintiff as the minor son of his deceased father who was killed by being run over by one of defendant's engines attached to a freight train and engaged in switching at the Harrisonville station. Deceased was an employe of defendant engaged as a brakeman on the train which killed him, and at the time was attempting to *uncouple* cars. The judgment below was for plaintiff.

Since the result of our investigation of this case is to dispose of it on the contributory negligence set up in defendant's answer we will not notice other matters discussed at the argument. The negligence charged against defendant in the petition is the failure to block the "guardrail" on defendant's track at the point where it had a siding or switch, and where deceased met his death. The testimony showed quite conclusively that blocking the guardrail made the track safer for the use of employes, and that the track without the blocking at such places was more dangerous for the use of employes. It also appears established that, in the absence of the conductor of a freight train engaged in switching, the brakeman is in charge of the movements of the train; that the engineer looks to him for orders or signals as to movements; that such engineer will obey the brakeman's order or his signals. It also appears that in this instance the conductor was absent from the train having gone into the depot at some little distance off, and that deceased was directing the switching. It appears that wishing to cut off some cars it became necessary to uncouple them, and that he signaled the fireman (then in charge of the engine) to back up; that thereupon the fireman began to move the cars back at a rate of speed of between four and six miles per hour, and deceased went in between the cars and jumped out again. Plaintiff's witness on this

point stating that, "I saw him go in and go out as if they were going too fast." He immediately went in the second time, at a point stated to be from thirty to fifty feet north of the north end of the guardrail, and was killed; his body being found lying across one of the main rails about ten feet south of the south end of the guardrail; the latter rail being ten or fifteen feet in length.

Our conclusion is that notwithstanding there was evidence tending to show that deceased's foot was caught in the unblocked place between the guardrails and main rail, yet the uncontradicted evidence shows such character of negligence on deceased's part as to preclude plaintiff's recovery. His own and the train's movements were under his control. At most the mere movement of the train so as to give it slack would have enabled him to uncouple the cars. After setting the cars in motion and observing their rate of speed he made one attempt to uncouple and desisted. He then again, without ordering or signaling a slowing up, attempted to uncouple when he knew that to do so involved the necessity of his going with the cars at the rate of speed stated. The testimony for plaintiff shows this rate of speed (if we adopt the mean rate stated) to be five miles per hour. Now for an employe, of his own volition, to go in between cars *moving at that rate*, the evidence showing that there was *no emergency or necessity* requiring it, in my opinion amounts to recklessness. There was no necessity or emergency to influence him. The evidence shows that the uncoupling could have been done without moving the cars. He had the authority to require the train to be slowed up or stopped entirely. But with no care for results, or else with a total indifference to consequences, he chose to make a second attempt rather than have the cars moved slower. The remarks in the case of

*Marsh v. Railroad*, 56 Ga. 274, are applicable to the conduct of the deceased. The court said in that case that, "He saw that the train did not stop for him to uncouple; and he, nevertheless, rushed in and tried to uncouple when the cars were in rapid motion."

Besides this, leaving out of consideration whether deceased knew that the guardrail was unblocked, yet he must have known that at a siding or switch there must be a rail crossing the track obliquely which would, of course, make it more perilous to one moving between the cars as he was compelled to move, without being able to see or look out for obstructions.

It did not appear and perhaps could not be shown whether deceased could or could not readily and quickly pull the coupling pin. But in either event he was guilty of negligence in remaining between the cars, going at that speed, for the distance covered, if he was not hurt until he reached the guardrail. If he could not pull the pin he should, under the circumstances in which he had placed himself, have stepped from between the cars instead of remaining, in the perilous effort to move along with the cars at that speed. On the other hand, if he pulled the pin readily, he indifferently and recklessly remained between the cars without even the semblance of a cause. It was negligence bordering on recklessness for him to remain between the cars approaching the switch as he knew. *Williams v. Railroad*, 43 Iowa, 396.

There was no attempt made to justify or defend deceased's act, or to show any necessity for it; on the contrary, one of the plaintiff's witnesses, an experienced railroad man, stated (without objection being made thereto) the act to have been imprudent and dangerous and not the act of a careful man. It furthermore appeared affirmatively that the act was unnecessary. Another of plaintiff's witnesses thought deceased not

"much of a railroad man," and, from some of the observations of the witness, that he "must have been a careless man." The case seems clear to us from plaintiff's own showing that deceased's own voluntary conduct brought about the unfortunate accident causing his death, and we must, therefore, reverse the judgment.

The question of negligence in any particular case must, of course, be governed by the facts and circumstances which pertain to the case as made. Now in this case plaintiff's most material witnesses pronounced his act uncalled for, dangerous and careless. He ordered the cars to be run back when he should only have had them "slack up," so as to loosen the coupling pin. The evidence shows that without cause or necessity he went in between the cars which were moving at that speed *by his order*, and this against the rules of the company, as was practically admitted on cross-examination by plaintiff's witness, Howard, the conductor. As before stated, there was no effort made at the trial to justify or excuse the act. There was nothing to show that such acts were customary with prudent switchmen or had ever been attempted under such circumstances.

We are cited to the cases of *Railroad v. Nickels*, 50 Fed. Rep. 718; *Robb v. Railroad*, 87 Ga. 631, and *Waldhier v. Railroad*, 87 Mo. 37. In the first case there was proof of total abandonment by the company of its rules relative to coupling cars. The accident occurred from coupling cars, and was by order of the servant's superior officer. The court said that "cars cannot be coupled when both are stationary; they cannot be coupled after the moving car strikes the stationary car, save by a renewed endeavor. At some time while one of the cars is moving," the coupling must be made. In the case at bar the act was *uncoup-*

*ling* cars,· an act which plaintiff's testimony shows should be done when the cars are not moving. The case from Georgia was also an accident which happened in coupling cars, and where there was "direct and positive evidence tending to support the theory of safety" in doing the act.

The *Waldhier case* was where "the plaintiff by directions of his superior" was attempting to uncouple cars "moving *slowly so as to produce a slack.*" We are not able to see where these cases can be applied to the facts and circumstances of the case at bar. Reversed.