HOLLENBECK v. MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

In Banc, July 17, 1897.*

1. **Evidence**: QUESTIONS BASED ON ASSUMPTIONS. A question based upon the assumption that a certain fact has been proven when it has not, is improper.

2. ——: ——: CASE STATED. In this case plaintiff, a railroad brakeman, asked: "What is a slow and safe rate of speed to do coupling and uncoupling when switching cars?" *Held*, to be proper, because plaintiff had previously read in evidence a rule of the company, which said: "Do not go between the cars unless they are moving at a slow and safe speed."

3. ——: IMPROPER QUESTION: WAIVER. An improper question should be objected to before it is answered, and if not made then it comes too late after answer, in which case the court should be moved at the time, or by instruction, to exclude it and the answer from the consideration of the jury, and a failure to do any of these things is an implied waiver of any objection to both question and answer. The improper question asked plaintiff in this case, which is an action for damages for personal injuries, was: "Have you a family?"

NOTE.—Decided first in Division Two, then transferred to Court *in banc*, there decided May 25, and rehearing denied July 17, 1897.

4. ——: ——: ——: SETTING ASIDE VERDICT. It must appear that the attorney who asked an improper question was guilty of a flagrant case of impropriety, before this court will be justified in interfering when the trial court had refused on that ground to set aside a verdict in favor of his client.

5. ——: READING OF STATUTE TO JURY: WITHDRAWAL. Plaintiff sued for injuries received in a railroad accident in Kansas, and at the trial, over the objection of defendant, was permitted to read in evidence a Kansas statute that defined the liabilities of railroads for injuries to their employees. Held, that whatever error was committed by permitting it to be read was cured by its withdrawal from the consideration of the jury by plaintiff before the case was finally submitted.

6. ——: READING OF STATUTE TO JURY: HARMLESS ERROR. Plaintiff read to the jury, in a common law action, a statute of Kansas declaring the common law to be in force in that State, but that "the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute" thereof. Held, that as the statute could not have had any effect upon the minds of the jury, its admission was harmless error, and should not work a reversal of the judgment in face of section 2303, Revised Statutes 1889, prohibiting the reversing of a judgment unless error materially effecting the merits of the case was committed.

7. Negligence: SAFE TRACKS. Railroad companies are required, as their duty to their employees, to keep their tracks in reasonably safe repair, so as to prevent injury to them, and for failure to do so they are liable for the consequences.

8. ——: FACTS FOR JURY. Whether or not plaintiff, a brakeman, knew of the existence of the ditch in the railroad track, into which he stepped while coupling cars, or had the opportunity to know, or would have known if he had been reasonably careful and observant, the evidence being conflicting, are matters for the consideration of the jury; and it is also the province of the jury to determine whether or not the weight of the evidence tended to show plaintiff was guilty of contributory negligence in going between the cars while in motion, under the evidence of the case. (Distinguishing Marsh v. Railroad, 56 Ga. 274; Williams v. Railroad, 43 Iowa, 396, and Jackson v. Railroad, 31 Kan. 761.)

9. Verdict: RESULT OF PREJUDICE. As there is no way by which it can be proven that jurors who seem to have made an excessive verdict were controlled by improper influences, such fact can be inferred only when the verdict is so out of line with reason and justice as to shock the conscience, and to satisfy the unbiased mind that it is not the result of impartial and unprejudiced deliberation. To justify the inference that the verdict is the result of passion or prejudice, the facts in evidence ought not to justify any other conclusion.

*Appeal from Jackson Circuit Court.*—Hon. James
Gibson, Judge.

Affirmed.

*Elijah Robinson* for appellant.

(1) The trial court committed error in overruling
defendant's objection to the question asked by plain-
tiff's attorney: "What is a slow and safe rate of speed
to do coupling and uncoupling when switching cars?"
This question assumed a fact which had not been
proven; that is, that there was "a safe rate of speed for
coupling and uncoupling cars." *Haish v. Munday*, 12
Brad. (Ill.) 545; *People v. Mather*, 4 Wend. 249;
*People v. Graham*, 21 Cal. 261. (2) The question
asked plaintiff by his counsel as to his having a family
was calculated to exert an improper influence on the
minds of the jurors, to the prejudice of the defendant,
and for that reason the court should have sustained
the motion for new trial. *Overholt v. Vieths*, 93 Mo.
422; *Stephens v. Railroad*, 96 Mo. 214; *Mahaney v.
Railroad*, 108 Mo. 191. (3) The court committed
error in overruling defendant's objection to section
6684 of the statutes of Kansas. There was no allega-
tion in the petition to warrant the introduction of such
evidence. *Haynes v. Christian*, 30 Mo. App. 198;
*State to use v. Roberts*, 62 Mo. 388; *Brooks v. Blackwell*,
76 Mo. 309. (4) The trial court committed error in per-
mitting plaintiff's counsel to put in evidence and read
to the jury section 5204 of the statutes of Kansas.
*Frederick v. Allgaier*, 88 Mo. 598. The error was not
cured by plaintiff subsequently announcing to the
court that he would consider the evidence withdrawn.
(5) The mere fact that there was a depression or ditch
in the track, and that plaintiff stepped in the same and

was injured, did not show negligence.   *Smith v. Rail-road*, 69 Mo. 32;  *Siela v. Railroad*, 82 Mo. 430;  *Covey v. Railroad*, 86 Mo. 635.   (6) The defendant knew of the existence of the defect in the track, if it was a de-fect;  or, which is in legal effect the same thing, had the opportunity to know and would have known if he had been reasonably careful and observant, and must therefore be held to have assumed the risk.   *Hulett v. Railroad,* 67 Mo. 239;  *Devitt v. Railroad*, 50 Mo. 303;  *Keegan v. Kavanaugh*, 62 Mo. 232;  *Porter v. Railroad*, 71 Mo. 77.   (7) The plaintiff was guilty of contributory negligence in going between the cars when in motion, there being no necessity for his doing so, and he being aware of the danger.   *Towner v. Railroad,* 52 Mo. App. 648;  *Marsh v. Railroad*, 56 Ga. 274;  *Williams v. Rail-road*, 43 Iowa, 396.   (8) The damages assessed were excessive, and such, as to make manifest the fact that the verdict was not the result of a fair and reasonable consideration of the evidence.   *Sawyer v. Railroad*, 37 Mo. 240;  *Adams v. Railroad*, 100 Mo. 555;  *Gurley v. Railroad*, 104 Mo. 211;  *Furnish v. Railroad*, 102 Mo. 438;  *Rose v. Railroad*, 39 Iowa, 256;  *Spicer v. Rail-road*, 29 Wis. 580;  *Railroad v. McAva*, 52 Ill. 296.

*Oscar L. Smith* and *L. H. Waters* for respondent.

(1)   The appellant's rule, in authorizing its em-ployees to go between the cars when "moving at a slow and safe speed," authorized the assumption that "there was a rate of speed which would be safe for coupling and uncoupling cars."   *Johnson v. Railroad*, 96 Mo. 340;  *Muldowney v. Railroad*, 36 Iowa, 472;  *Taylor v. Town of Monroe*, 43 Conn. 36;  *Thompson v. Ish*, 99 Mo. 160;  *Hart v. Bridge Co.*, 84 N. Y. 56.   (2) When respondent was asked if he had a family the appellant

made no objections to the question, although ample
time was given him to do so. Having failed to inter-
pose an objection to the question when asked, appellant
must be held to have waived it. 1 Thomp. on Trial,
sec. 700; *State v. Arnewine*, 37 S. W. Rep. 790; *Max-
well v. Railroad*, 85 Mo. 106; *Combs Com. Co. v. Block*,
130 Mo. 683. (3) Where incompetent evidence is
excluded by instructions or withdrawn, the error is
cured. *Winters v. Railroad*, 39 Mo. 475; *Stephens v.
Railroad*, 96 Mo. 214; *Nolan v. Johns*, 126 Mo. 164;
*Durant v. Coal Co.*, 97 Mo. 67; *Griffin v. Hanks*, 91
Mo. 116. (4) No exceptions were saved as to any
ruling of the court upon the question or the answer,
nor is any error assigned thereon in the motion for a
new trial, and therefore there is no available error.
*State v. Higgins*, 124 Mo. 640; *Hoyt v. Williams*, 41
Mo. 270; *Harrison v. Bartlett*, 51 Mo. 270; *Griffith v.
Hanks*, 91 Mo. 116; *Herdler v. Buck's Stove Co.*, 136
Mo. 3. (5) In the motion for a new trial it is charged
that respondent's counsel was guilty of improper
conduct in asking respondent if he had a family. If
asking the question amounted to improper conduct, the
point should have been made at the time and excep-
tions saved. Nothing of the kind was done. *Gidion-
sen v. Railroad*, 129 Mo. 405; *Burdoin v. Trenton*, 116
Mo. 373. (6) Counsel insists that the asking of an
incompetent question is reversible error, although not
objected to when asked. It never has been so decided.
(7) The introduction of section 6648, Kansas Statutes,
adopting the common law, was a harmless error. *Meyer
v. McCabe*, 73 Mo. 236; *Benne v. Schnecko*, 100 Mo.
250; *Burdict v. Railroad*, 27 S. W. Rep. 453. (8) It
was appellant's duty to use reasonable care in main-
taining its track and roadbed in such condition as to
make it reasonably safe for the use of its employees in
their business. *Stoher v. Railroad*, 91 Mo. 509; *Hamilton*

*v. Coal Co.*, 108 Mo. 364; *Alcorn v. Railroad*, 108 Mo. 81; *Williams v. Railroad*, 119 Mo. 316. (9) The section foreman knew of the existence of the ditch. It was his duty to keep the track in repair. Notice to him was notice to the company, and his negligence was the company's negligence. *Lewis v. Railroad*, 59 Mo. 506; *Porter v. Railroad*, 71 Mo. 78. (10) Respondent did not know of the existence of the ditch. He had a right to assume that the roadbed was in a reasonably safe condition. *Fordyce v. Yarborough*, 21 S. W. Rep. 421. (11) He was not guilty of such contributory negligence as will preclude a recovery. *O'Mellia v. Railroad*, 115 Mo. 205; *Railroad v. Kirkland*, 32 S. W. Rep. (Tex.) 591. (12) The damages were not excessive. *Barr v. Kansas City*, 121 Mo. 32; *Moore v. Railroad*, 85 Mo. 588; *Waldhier v. Railroad*, 87 Mo. 37; *Railroad v. Moore*, 31 Kan. 197; *Griffith v. Railroad*, 98 Mo. 168.

BURGESS, J.—This is an action for damages for personal injuries sustained by plaintiff while in the service of defendant as a brakeman, because of an alleged defect in its roadbed, which resulted in the loss of his left leg. The answer alleges contributory negligence on the part of plaintiff. He recovered a verdict and judgment for $10,000 damages and defendant appealed.

The facts are substantially as follows:

The accident occurred at a station on the line of defendant's road, in the State of Kansas, on the seventeenth day of February, 1892. At the time plaintiff was in the employ of defendant in the capacity of brakeman and baggageman on what is known as the "cut-off," running from Marquette to Gypsum City in said State, a distance of twenty-seven miles. The train was a mixed train, composed of one passenger

coach and a number of freight cars. It left Marquette at 7:41 A. M., and was due to arrive at Gypsum City at 9:05 A. M., thus giving an hour and twenty-four minutes in which to make the run. Besides the side track near the depot at Lindsborg, there is a spur track, used for the purpose of loading and unloading cars. When the train reached Lindsborg on the morning of the accident there was a car on the spur track, which was to be taken in the train, and one standing on the main line, or in the train, which was to be left on the spur track. Plaintiff took charge of the train as it was his custom to do, and undertook to do the switching. During the switching it became necessary to move the train north of the point of the spur track, in order to back it onto the main track. When it had gotten far enough north for that purpose, plaintiff signaled the engineer to back down, and started north to meet the train. Near where he met it there were two depressions in the track, one somewhat larger than the other. He went in between the cars to uncouple them, walked along with the motion of the cars, and while doing so, stepped in the smaller ditch, fell down, and was run over by the cars and injured. The ditches were dug the latter part of the preceding summer, and were variously estimated by the witnesses to be from four to six inches deep. Plaintiff had been running over this cut-off twice a day for more than a year before the accident, occasionally switching cars at this station, and placing them on and taking them off this spur track. The ditch which caused plaintiff to fall was in plain view. When he met the train it was then moving from three to four miles an hour. While doing the switching plaintiff had control of the movements of the train. He testified that he did not know the ditch which caused him to fall was there before that time; that he had never been over that part

of the track; and that it was perfectly safe to go in between cars for the purpose of coupling them, and to walk along with them, and in between them, when only moving at the rate of from three to four miles per hour.    On cross-examination he stated that he knew that it was dangerous to go in between cars when they were in motion.    The evidence on the part of the defense tended to show that plaintiff had knowledge of the ditch before the accident.    Plaintiff was something over thirty-two years of age at the time and earning $65 per month.    After the injury he was taken by defendant to its hospital in Kansas City, where his injured limb was  dressed by the company surgeons, and the broken bones wired in  place.    His leg was amputated at the hospital, above the knee, on the sixteenth day of June, 1892.    He remained at the hospital for six months.

1.    During the trial plaintiff asked one of his witnesses, J. A. Foster, the following question: "What is a slow and safe rate of speed to do coupling and uncoupling when switching cars?"    To this question defendant objected upon the ground that it assumed that there was some rate of speed which would be safe for coupling and uncoupling cars.    The objection was overruled, and the witness answered: "About three or four miles an hour; about as fast as a man could walk, walking fast."    It is now insisted that the question assumed a fact which had not been proven, that is, that there was "a safe rate of speed for coupling cars and uncoupling cars," and there was error committed in permitting it to be answered.    It may be conceded that a question based upon the assumption that a certain fact has been proven, when it has not been, is improper.    *Railroad v. Thompson*, 10 Md. 76; *People v. Graham*, 21 Cal. 261; 1 Greenl. Ev., sec. 434.    Before the question was asked, plaintiff had read in evidence a rule of

defendant company, which is as follows: "Great care must be used in coupling and uncoupling cars. Do not go between the cars unless they are moving at a slow and safe speed, nor attempt to make any coupling unless the drawbars and other coupling appliances are known to be in good order." This rule implies that there may be a slow and safe rate of speed for coupling and uncoupling cars, and obviated any necessity for proving by other evidence that such is the case. Moreover, another witness for plaintiff (J. L. Patrick) testified, without objection, to the same effect. Under the circumstances there was no error committed in admitting this evidence.

2. During the examination of plaintiff, who testified as a witness in his own behalf, the following occurence took place:

"Mr. Waters (attorney for plaintiff): 'I will ask you this question,—you needn't answer if the gentleman objects: Have you a family?' A. 'I have.' Mr. Robinson (attorney for defendant): 'I object to that. Colonel Waters knew it wasn't competent.' Mr. Waters: 'I think it is competent, but I don't care to take any risk on it.' (The objection was sustained.)"

The question was manifestly improper. Whether plaintiff had a family or not had no connection whatever with the accident, or any injury occasioned thereby; but the objection was not made until after the question had been answered, hence too late. When the objection was made it was sustained, and if defendant desired to remove any prejudicial effect that the evidence might have on the minds of the jurors, it should have moved the court to exclude it at the time, or by instruction, from their consideration. Having failed to do either, defendant impliedly waived any objection that it had to the introduction of the evidence

which it might have enforced by timely action.
1 Thomp. Trials, secs. 715, 716.

But defendant insists that counsel for plaintiff by
asking a question which he knew to be improper, got
before the jury a fact that was hurtful to it and evi-
dently influenced the jury; that a verdict obtained by
such methods ought not to be permitted to stand; and
as the attention of the trial court was called to it in the
motion for a new trial, error was committed in overrul-
ing the motion.    If a verdict of a jury is to be set aside
because of illegal and improper questions propounded
to a witness during such a trial by counsel who may be
so fortunate as to recover a verdict before them for his
client, there are but few verdicts that would withstand
the test, and this is true, even though the question be
known to be improper by the person asking it.    We
know of no rule of law which precludes an attorney
from asking a witness during the trial of a cause a
question, even though he may know it to be improper,
so that it be civil and respectful.    How is he to know
that opposing counsel will object until the objection be
made?    It might be with respect to something that
opposing counsel would like to get before the jury, and
not object for that reason.

We do not wish to be understood, however, as
ruling that an attorney should be permitted to trifle
with the court, or that trickery and what is called
"sharp practice," should be resorted to or even per-
mitted.  Such matters are peculiarly within the province
of the trial court, who can form a much better idea as
to whether a verdict has been obtained by such methods
or not, and if so should not hesitate to set it aside.
But it would have to appear to be a flagrant case of
impropriety to justify this court in interfering when
the trial court has refused to set aside a verdict upon
that ground.

3.   Plaintiff was permitted to read to the jury over the objections of defendant sections 5204 and 6648 of the Kansas Statute, and in this ruling it is claimed that reversible error was committed.   The first pertains to the liability of railroad companies to their employees for damages for injuries sustained by them, by reason of the negligence or mismanagement of the agents or other employees of railroad companies, and whatever of error was committed by permitting it to be read to the jury, was cured by its withdrawal from their consideration by plaintiff before the case was finally submitted to them.   On the trial of *Winters v. Railroad*, 39 Mo. 468, plaintiff's counsel asked a witness how many children the plaintiff had; he answered, six.   The defendant then objected to the admission of this testimony, and its objection was overruled and an exception taken.   The plaintiff thereupon withdrew the question and answer, and it was held that because of its withdrawal from the consideration of the jury any impression it may have made upon their minds would be an insufficient ground 'for setting aside the verdict and judgment.

The other section pertains to the common law as it exists in that State, and the construction of its statutes with respect thereto.   This is a common law action, transitory in its nature, and not bottomed on any statute.   The statute was therefore clearly inadmissible for any purpose.   Should the judgment be reversed upon that ground alone?   The weight of authority in this State is to the effect that all errors committed by the trial court are presumed to be prejudicial to the party against whom made, and unless from the whole record it appears otherwise, the judgment should be reversed. *State v. Simms*, 68 Mo. 305; *McDonald v. Matney*, 82 Mo. 358; *Dayharsh v. Railroad*, 103 Mo. 570; *Green v. St. Louis*, 106 Mo. 454.

The statute simply declares that the common law as modified by Constitution and statutory law, judicial decisions, and the condition and wants of the people, shall remain in full force in aid of the general statutes of that State, but that the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of the State; but that all statutes shall be liberally construed to promote their object. How this statute, not pertaining to any particular fact, so foreign to the issues involved, could have had any effect on the minds of the jury in this case, we are at a loss to imagine. There was nothing in it to excite their prejudices, or to in any manner warp or bias their judgments, and we are satisfied from the record that it did not do so. And as by section 2303, Revised Statutes of 1889, we are prohibited from reversing any judgment unless it appears that error was committed materially affecting the merits of the action, we do not feel that we would be justified in reversing the judgment on that ground.

4. At the conclusion of plaintiff's evidence, defendant asked an instruction in the nature of a demurrer thereto, which was refused by the court, and exceptions duly saved; and again, at the close of all the evidence, the same or a similar instruction was asked by defendant, with like result. It is now insisted that the instruction should have been given, because: *First*, there was no evidence of negligence on the part of defendant; *second*, the plaintiff knew of the existence of the defect in the track, if it was a defect, or had the opportunity to know, and would have known if he had been reasonably careful and observant, and must therefore be held to have assumed the risk; *third*, the plaintiff was guilty of contributory negligence in going between the cars when in motion, there being no necessity for

his doing so, and he being aware of the danger.   Of these in their regular order:

While a master is not an insurer of the safety of his servant, the law imposes upon railroad companies as their duty to their employees, to keep their tracks in reasonably safe repair, so as to prevent injury to them, and for failure to do so they are liable for the consequences.   *Burdict v. Railroad*, 123 Mo. 221; *Williams v. Railroad*, 119 Mo. 316; 24 S. W. Rep. 782.

They are not, however, required to furnish tracks that are absolutely safe.   While it may be conceded that the mere fact that there was a ditch in the track, and that plaintiff stepped into the same and was injured, did not make out a case which entitled him to recover judgment against the railroad company, yet when the further facts that the ditch into which he stepped and which caused him to fall was from four to six inches deep, if it be true that he had no knowledge of its existence before that time as testified to by him, the rule of the company permitting its employees to go in between the cars when moving at a safe rate of speed, which was shown to be the case at the time of the accident, and that defendant's section foreman having charge of the roadbed at that point knew of the existence of the ditch for several months before the accident, are also taken into consideration, he made out a *prima facie* case, which entitled him to the opinion of the jury.   It then devolved upon defendant to overcome this *prima facie* case, and to show that plaintiff was guilty of contributory negligence.

It was said in *Porter v. Railroad*, 71 Mo. 77: "If, however, the defect is patent, open to observation, or such as the ordinary use of the machine in the business the servant is engaged in would disclose to an ordinarily observant man operating it, and the servant had ample opportunity by operating it, before being

injured to observe the defect, his opportunity to know would be held as knowledge, whether in fact he knew of the defect or not." It was also said: "It is not incumbent upon the employee to search for latent defects in machinery or implements furnished him by the employer, but without such investigation he has the right to assume that they are safe and sufficient for the purpose." A judgment for $10,000 in favor of plaintiff in that case on facts not more favorable to him than were the facts in favor of the plaintiff in the case in hand, was affirmed. See, also, *Snow v. Railroad*, 8 Allen, 445; *Curtis v. Railroad*, 70 N. W. Rep. 665.

As to whether plaintiff knew of the existence of the ditch, or had the opportunity to know, and would have known if he had been reasonably careful and observant, the evidence was conflicting, and was for the consideration of the jury. *Huhn v. Railroad*, 92 Mo. 440, 4 S. W. Rep. 937. And unless he knew, or may be presumed to have had knowledge or notice, of the ditch, he can not be held to have assumed the risk.

The weight of the evidence tending to show that plaintiff was guilty of contributory negligence, in going between the cars when in motion, was also for the consideration of the jury, and upon which reasonable minds might well differ. The rule of the company which was read in evidence certainly implies that in coupling and uncoupling cars the employees of the company may go in between the cars for that purpose, when the cars are moving at a slow and safe speed. Experienced railroad men, including the conductor and engineer in charge of the train upon which plaintiff was engaged, both testified that from three to four miles an hour is a safe rate of speed to couple and uncouple cars. They also testified that such work was more or less dangerous. We are cited to the cases of *Towner v. Railroad*, 52 Mo. App. 648; *Marsh v. Rail-*

*road*, 56 Ga. 274; *Williams v. Railroad*, 43 Iowa, 396; and *Jackson v. Railroad*, 31 Kan. 761, 3 Pac. Rep. 501, as holding that plaintiff was guilty of contributory negligence in going between the cars when in motion, he being aware of the danger, and there being no necessity for his so doing. The first case differs very materially in its facts from the case at bar. In that case the deceased went in between the cars, to uncouple them, while they were moving at a rate of speed of between four and six miles per hour, in violation of the rules of the company. He was seen to "jump in and go out as if they were going too fast," and then return again and was killed. In the case at bar the plaintiff was not acting in violation of the rules of the company. The cars were moving at a rate of speed from three to four miles per hour, which was shown to be a reasonably safe rate of speed for coupling and uncoupling cars. The difference in the facts is obvious. In the *Williams* case the question presented was as to whether the accident was the proximate result of the defective construction of the cars. The plaintiff in attempting to couple them, failed to do so at the first attempt, and instead of stepping out from between them, as he might have done, continued the attempt as the cars were moving along, and caught his foot in a frog, and was injured. No negligence was attributed to the company on account of the frog, and it was rightfully held that he could not recover. The *Jackson* case only affirms the well known general rule that when the servant continues in the service of the master, with full knowledge of a defect in machinery which he uses in his service, he is presumed to assume the risk, and can not recover for injuries sustained by him by reason of such defect. There are, however, exceptions to this general rule, which are unnecessary to state here. In the *Marsh* case the cars were in rapid motion when the injured

party "rushed in and tried to uncouple" them; and it was held that he was guilty of contributory negligence, and no recovery could be had against the company. We do not think, under the facts disclosed by the record, that plaintiff was guilty of negligence *per se,* nor that the court would have been justified in so declaring as a matter of law, notwithstanding plaintiff was in the absolute control of the train at the time of the accident. In addition to what has been stated, he testified that he didn't have time to uncouple the car while the train was standing still, and that the way he attempted to do it was the customary way. From what has been said, it logically follows there was no error in refusing the sixth instruction asked by defendant. Those that were given presented every phase of the case to the jury, and are, in so far as we have been able to discover, when considered altogether, as they should be, free from substantial objection.

We are asked to reverse the judgment upon the ground that the damages awarded by the jury are excessive, and manifestly the result of passion or prejudice. As there is no way, in so far as we are advised, by which it can be proven that jurors who seem to have made an excessive verdict were controlled by improper influences, it can be inferred only when such verdict is so out of line with reason and justice as to shock the conscience and to satisfy the unbiased mind that it is not the result of an impartial, unprejudiced, deliberative body. To justify such an inference, the facts and circumstances in proof ought not to justify any other conclusion. Do the facts in this case justify such an inference or conclusion? The plaintiff, at the time of the injury, was a few months over thirty-two years of age, in the vigor of manhood, and earning $65 per month. His left leg was crushed below the knee, which necessitated amputation. It was ampu-

tated three times, the last time above the knee. He remained in the hospital for six months; is a cripple for life. His suffering was long and severe. The jury gave him a verdict for $10,000, and the trial court gave it his approval. While the verdict is large, we are not prepared to say that it was the result of passion or prejudice; and, as it has been recently held, this court has no power to require a *remittitur*. *Rodney v. Railroad*, 127 Mo. 676.

The judgment is affirmed. GANTT, P. J., concurs. SHERWOOD, J., dissents.

### IN COURT IN BANC.

PER CURIAM.—The opinion prepared by BURGESS, J., in the second division of the court is hereby adopted as the opinion of the majority of the court *in banc*. The judgment of the circuit court is therefore affirmed, all the judges concurring except SHERWOOD, J., dissenting.