BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1914.

RALPH H. DAVIS, Respondent, v. METROPOLITAN
STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, July 6, 1914.

1. NEGLIGENCE: Personal Injuries: Coupling Car: Contributory
Negligence: Question for Jury. Plaintiff's duty was to go
between a street car and its trailer, after the two had been
brought close together, and adjust the drawheads (which had
a lateral and also a perpendicular motion), so that they would
articulate with each other and couple. The method of doing so
was for plaintiff to hold the trailer drawhead in position and
order the front car to be backed very slowly the few inches
required to make the coupling. The method of doing this was
for the motorman to set the breaks with thirty pounds of air and
apply one point of power which was the least that could be
applied. With the brakes set this would just move the car.
When the car would reach the required point, the power would
be thrown off and the brakes would instantly stop the car.
On this occasion the motorman after receiving from plaintiff
the order to back the car very slowly six inches, set the brakes,
applied one point of power and the car began to move slowly.
The motorman then negligently released the brakes instead of
throwing off the power and the car went back suddenly with
great force causing the drawbars to buckle or veer to one side
and allowing the cars to come close together crushing plain-
tiff's shoulder and bruising his lung. Held, that plaintiff could

(128) [188 Mo. App.

Davis v. Street Railways.

not be declared to be guilty of contributory negligence, as matter of law, for going between the cars, and that this question as well as the question whether tuberculosis arose from the bruise to the lung were questions for the jury.

2. ————: ————: ————: ————: ————. Where, owing to the nature of the act to be done, the slight variation of bodily posture in doing it, the infinite variety of infinitesimal circumstances surrounding the occurrence, and the different conclusions which can be properly drawn from the evidence as to the way in which the act is done and the injury may have occurred, the questions of defendant's liability and of plaintiff's contributory negligence are peculiarly for the jury. And this is true even though plaintiff admitted the act could have been done some other way, provided the evidence shows that the way he did it when injured was the way defendant taught him to do it and was the method in vogue and was not so obviously dangerous that a reasonably prudent man would not have undertaken to do it that way.

3. PLEADING: Petition: Failure to Allege that Defendant's Servant Knew or Could Have Known of Plaintiff's Danger at Time of Negligent ·Act. Although the petition did not contain an allegation expressly saying that the motorman knew or could have known of plaintiff's situation, yet where it stated facts which, if true, showed that the motorman knew where he was and what he was doing, this was sufficient.

4. EVIDENCE: Examination of Expert. Where a medical witness knows of his own knowledge of physical conditions and had stated what those were, it was wholly unnecessary, in asking him whether in his opinion‾ the injury to the lung would render it more susceptible to tuberculosis, to incorporate in the question the evidence as to how the bruised condition was brought about.

5. ————: ————: Invading Province of Jury. If the question asked was, did tuberculosis arise in the lung as a result of the bruise, then its asking would have been error even though the doctor gave it as being merely his opinion, since that was the ultimate question for the jury to determine. But the question being, is or is it not more likely that a bruised and wounded lung will contract tuberculosis than an uninjured one, and is such a lung rendered more susceptible thereto, such a question goes no further than to bear on what may or is likely to result from the condition shown, leaving the jury to say whether the disease did. so result therefrom.

6. INSTRUCTIONS: Asking but ·One Instruction and That on the Measure of Damages. While the practice of asking no

188MA9

instruction except on the measure of damages is one the Supreme Court has *recently said should be condemned*, yet it has been so long the law in this State that, until the Supreme Court says such practice is error and that a case should be reversed and remanded for that reason, the Court of Appeals will not do so.

7. ————: ————: **Direction to Find for Plaintiff Regardless of Negligence.** Where, however, the only instruction asked is on the measure of damages and requires the jury to assess damages for the injuries they find plaintiff received as a direct result of being caught between the cars, leaving out the question of whether he was so caught as a result of defendant's negligence, such instruction is erroneous because it. disregards the question of whether defendant was negligent or not and is substantially a direction to find for plaintiff at all events.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

REVERSED AND REMANDED.

*John H. Lucas* and *Hogsett & Boyle* for appellant.

*Botsford, Deatherage & Creason* for respondent.

TRIMBLE, J.—Plaintiff was a hostler in defendant's car barn at forty-eigth and Harrison streets in Kansas City. Certain cars called "trailers" could not take the electric current from the wire and be propelled thereby, but each of such trailers was used by coupling it to a car that could do so, known herein as a motor car. One of plaintiff's duties as hostler was to couple these trailers to their respective motor cars. In doing so he was caught between them—the motor car and the trailer—and his chest crushed, resulting, as he alleges, in the setting up of tuberculosis in his lungs. A trial in the lower court resulted in a verdict and judgment for $7500 from which defendant has appealed.

As the verdict was in plaintiff's favor, we must treat the facts of the case from his standpoint giving

him the benefit of every reasonable inference the evidence will bear.

Connection is made between the two cars by means of a drawbar underneath each, extending backward a short distance from the motor and correspondingly forward from the trailer on the center line of the track and cars. These drawbars each end in what is called a "drawhead," which is an enlargement of the drawbar, having a tongue which fits into a socket on the other drawhead and a socket for the tongue on the opposite drawhead. Near the end of each tongue is a hole and in each drawhead is a corresponding hole running perpendicularly through the same, so that when the tongue of each drawhead is in the socket of the other, a pin may be inserted perpendicularly through each and the coupling thus made secure. The body of each drawhead forms a "shoulder" for its tongue and when the coupling is thus made the shoulders of both drawheads are together. The drawbars are so constructed that they can move around from side to side of the car in something like an arc of a circle. They can also move up and down to a limited degree, such lateral and perpendicular play being necessary to give the proper adjustment and flexibility between the cars in going up and down hill and around curves in the track.

When a trailer is needed it is coupled to a motor car in this wise: The motorman on the front end of the motor car backs it, under the direction of the hostler, till it is a short distance from the trailer and then stops. The hostler then steps in between the cars, brings the drawbars around until they are in alignment with the center of the track. If they are in true alignment the two drawheads will meet each other. The drawhead of the trailer hangs lower than the drawhead of the motor. Consequently, the hostler must not only see that the two are in alignment laterally but also that the trailer drawhead is in alignment with the motor

drawhead perpendicularly. He has to take hold of the trailer drawhead and lift it into proper position so that connection will be made when the motor car is backed and the shoulders of the two drawheads come together. Having gotten the two drawheads into lateral alignment and holding the trailer drawhead in what he thinks is perpendicular alignment, the hostler then signals or orders the motorman to back his car very slowly, giving the hostler opportunity to guide the drawheads aright so that the tongues of each slip into their proper places and the coupling is made.

The method used to back the motor car thus carefully and slowly is as follows: When the brakes are set with twenty to thirty pounds of air on them, the application of one "point" of power is sufficient to slowly move the car. The motorman, therefore, leaves the brakes set with this amount of air and applies one "point" of power and the car backs slowly to the required position for coupling. When that is reached, at the hostler's command the power is thrown off or withdrawn, and, the brakes being already set, the car instantly stops. One point of power is the least that can be applied. And that is sufficient to back the car with great force, and far too much force, if the brakes are not set as above stated.

Plaintiff claims, and his evidence tends to show, that the motorman, under his, plaintiff's, directions, backed the car until the tongues of the two drawheads were about six inches apart and the shoulders of the drawheads were something like ten inches apart, and then stopped; that plaintiff got off the rear end of the motor car, went between the two cars, adjusted the drawbar laterally and with his left hand lifted the drawhead of the trailer into proper alignment with that of the motor car and called to the motorman to back the car very slowly six inches. The car weighed 51,000 pounds and while it cannot be backed that distance to an exact nicety, yet, if properly done, it would

not vary over three inches either way. Plaintiff's evidence tended further to show that the motorman had the brakes set with the proper amount of air and applied the one point of power with the brakes thus set as he should have done, and that the car started to move back slowly as plaintiff had ordered it to do.   But plaintiff says that, instead of allowing the car to continue moving slowly back and throwing off the power at the proper time, thus letting the brakes stop the car instantly, the motorman, after the car had thus started slowly, threw off the *air* thereby releasing the brakes, and the car came back suddenly with great force, the tongues did not slip into or articulate properly with the opposite drawhead and the drawbars "buckled", that is, the drawheads veered to one side forming a V, or an elbow of the two drawbars, at the coupling point, and allowed the two cars to come together with great force crushing plaintiff's left shoulder and chest, making it sore, starting up an inflamation of the lungs, causing him to spit blood, and giving rise to tuberculosis, and otherwise injuring his head and ear.

The ends of the two cars are curved or bowed out toward each other so that the cars come closer together over the coupling point in the center of the track than at any point on either side thereof.   Defendant's evidence showed that *when the cars were coupled* the distance from the bumper of one car to the other was eleven inches, measured at the center line of the car. (The bumper is a heavy timber to receive and distribute the shock when one car strikes another.   The bumper on the motor car is at its center line and projects out a little beyond the end of the car, about an inch further than does the tail light which hangs just above it.   While the evidence refers to a bumper on the trailer, yet, if there is one, it does not project out as does the one on the motor.   This is clearly shown by the photographs of the two cars.)   From the tail

light to the dashboard of the trailer was twelve inches. From a point immediately east of the bumper on the motor to the trailer dashboard was seventeen inches. Measured from a point directly over the east rail, the distance between the two cars was two feet and at the east or outside line of the cars the distance was three feet. As stated before, these measurements are with the cars properly coupled, with the shoulders of the two drawheads together and the two drawbars forming a straight line, which they must do if the cars are on a straight track as they were when the measurements were taken. The plaintiff was shown to be sixteen and one-half inches from one shoulder to the other. The brakes on the trailer were set, and plaintiff said that when he stooped over lifting the trailer drawhead to its proper position, and gave the order to back slowly six inches, his left shoulder was touching the dashboard of the trailer.

The foregoing statements are necessary, and must be borne in mind, in order to understand defendant's contention that plaintiff is not entitled to recover and that the demurrer should have been sustained. Defendant says that the proper way to couple the cars was for plaintiff to place his left foot just inside the rail keeping his right behind him and outside of the rail and with his left hand lift up the trailer drawhead and keeping his head and body back from the center line of the cars and having his body sidewise between them. By doing it in this manner, defendant says not only would his body be at a point between the cars where there was more space when they came to the coupling distance apart, but his body, being sidewise, would require less space. But defendant says that, instead of doing it in this manner, plaintiff put both feet inside of the rail, closer to the center line of the track than necessary, and stooped over with both shoulders on a line with the center of the two cars and lifted the trailer drawhead and while in this position, gave

the order to back; that as he had his left shoulder against the trailer dashboard and the space occupied by his body from shoulder to shoulder was sixteen and one-half inches and the distance between the two bumpers at the center of the cars when coupled was only eleven inches, his injury was caused by this method of coupling the cars and not by the negligence of the motorman in releasing the brakes at the instant the car started to move. Consequently, defendant says it can be said, as matter of law, that plaintiff is not entitled to recover.

We cannot bring ourselves to subscribe to this view. Owing to the very nature of the act to be done, the slight variations of bodily posture possible in doing it, the infinite variety of infinitesimal circumstances surrounding the occurrence, and the different conclusions and inferences which can properly be drawn from the evidence, looking at it as a whole and from a disinterested standpoint, the question of defendant's liability and plaintiff's contributory negligence are peculiarly for a jury to determine. For an appellate court, under all the circumstances, to say that plaintiff is not entitled to recover would be to pass on a mass of intricate facts, many of them slight it is true but none the less important, and draw a conclusion therefrom so cocksure as to be arbitrary.

It is true, plaintiff does admit that the coupling could have been made by backing the motor car until the tongue of the trailer drawhead could be laid on the tongue of the other and then step out from between the cars and order the car to back up the rest of the way. But it is clear that that was not the method in vogue. And it is equally clear that the tongues could not be laid upon each other at this time since they were six inches apart, and the rapid and forceful back occurred in bringing them within lapping distance. So that the injury would have happened if this method had been the one adopted.

It is true, also, that the distance from the car bumper in the center of the motor car to the other car, when the two were properly coupled, was only eleven inches while plaintiff's body measured across from shoulder to shoulder was five and one-half inches more than this. But it is not conclusively shown that both shoulders were in an exact line between the two bumpers in the center and that the injury was caused or contributed to thereby. Defendant took photographs of a man standing in such a position. But plaintiff testified he was not in that position, that while both feet were inside the rail, yet the right was drawn back, (which would tend to take the right shoulder out of alignment with the other and with the center of the car), and also testified that his body was not as far between the cars as the photograph showed and that his shoulder was not touching the motor car as appeared in the photograph. Plaintiff, while on the witness stand, was shown this photograph and asked to specify any other variation or difference between that and the way he did it, and said he did not see any other difference. But this does not authorize this court to look at the photograph and say, as matter of law, that the way plaintiff coupled the car was negligent or that such method caused or contributed to the injury. Plaintiff's duty was to couple the cars, that was the purpose of his going between them. He had to hold up the trailer drawhead in such a position both laterally and perpendicularly as to permit a fairly close fitting tongue on each to fit into the other. The drawhead weighed thirty-six pounds not counting the weight of the drawbar to which it was attached and which had to be lifted with it. The jury had a right to form its own conclusion whether the heavy drawhead could be lifted, put into proper alignment so that the two tongues would glide into their proper places, and the coupling be made with the body so far to one side of the coupling point and in the strained and unnatural position

of being so completely sidewise to it as defendant's witnesses testified was the only proper way. To get in the proper position to see whether the drawhead was held at the proper coupling point would require the man's eyes to be over or nearly over the line of the two drawheads. And to lift the heavy drawhead in the position stated by either plaintiff or defendant would require at least the left shoulder to be over or nearly over the same. That only the left shoulder was in reality over the drawhead is shown by the fact that it was the one most seriously hurt while the other side of his body was only slightly bruised, showing that the right did not get the full force of the tail light and bumper of the motor car as it would have done if the two shoulders had been as defendant insists they were.

Again, it was in evidence that if the car came back slowly the tongues could be adjusted properly and would slip into each drawhead, but that if the car came back rapidly and with great force, the tongues were liable not to articulate and, if so, the drawbars would buckle or veer to one side forming an elbow or V. at the drawheads, and allow the cars to come together, at least as close as the thickness of the bumper on the motor car would allow them. This was close enough to injure a man even standing sidewise. If now the car came back suddenly and with great force and the drawbars buckled and the cars came together as plaintiff says they did, not only would plaintiff have no opportunity to "get out of the way easy" as one of defendant's witnesses said he would if standing the way he said he should—i. e., sidewise—but the jury had the right to draw the inference that, inasmuch as only one shoulder, the left, was seriously hurt, plaintiff was not carelessly standing with his shoulders in line with the center of the car as defendant insists he was. From the foregoing it can be seen that it does not conclusively appear that plaintiff was guilty of contributory negli-

gence or that his injury resulted solely from his own careless way of doing the work.

Plaintiff testified that he did it the way defendant instructed him to do it, and, if so, then the fact that it *could* have been done some other way will not bar him of recovery, especially when that way was entirely different from the way exemplified in Exhibit 2 which defendant's witness said was proper. The method plaintiff says he was taught was not so dangerous that no reasonable man would attempt it. It is suggested that plaintiff did not testify as to just how he was instructed to couple the cars. But the record shows that he testified to the exact manner in which he did it and that he was instructed to do it that way. Later on, he was again asked whether or not he did it just as he was shown. To this an objection was made that it called for a conclusion of the witness. The court sustained the objection remarking that the witness had detailed both the manner in which he did it and the manner in which he was shown. Plaintiff's counsel then asked him to detail the manner in which he was shown to couple the car, but defendant's counsel objected on the ground that it had been gone over, and the court agreed with defendant's objection. Under these circumstances defendant is not in position to assert, with effect, that there is no evidence as to the manner in which plaintiff was taught to couple the car. There was also other evidence from which the jury could find that there was nothing unusual in plaintiff's method of coupling the car and that the way he said it was correctly done was the usual way. Plaintiff in going between the cars knew he was in full charge of the movements of the car. It is conceded by both sides that this is true and that the motorman must obey the hostler's orders. Plaintiff was not guilty of contributory negligence, as matter of law, in going between the cars since he had a right to assume that the car would come back slowly when ordered by him. And

if it had come back slowly pursuant to the order he gave, he would not necessarily have been crushed even had he been in the position defendant puts him, since then he would have had time to take his body out from between them as easily as one of defendant's witnesses says he could have done had he been standing as the witness says he should have stood. Plaintiff was not necessarily guilty of contributory negligence. [Cambron v. Omaha and St. Louis Ry. Co., 165 Mo. 543, l. c. 560-1; Young v. Waters-Pierce Oil Co., 185 Mo. 634, l. c. 666-8; Phippin v. Mo. Pac. Ry. Co., 196 Mo. 321, l. c. 345-6; Hollenbeck v. Mo. Pac. Ry. Co., 141 Mo. 97, l. c. 110-12; Hamilton v. Rich Hill Coal Mining Co., 108 Mo. 364.]

If the method in which plaintiff did the coupling was the customary method and the way in which he was shown, then it was proper for him to show these facts. [Gurley v. Mo. Pac. Ry. Co., 122 Mo. 141; Crawford v. Stockyards Co., 215 Mo. 394; Brunke v. Mo. Kansas Tel. Co., 115 Mo. App. 36; Spencer v. Bonner, 126 Mo. App. 94.] And defendant would be liable for an injury occurring through the negligence of the motorman where the method of doing the work was not so inherently dangerous that a reasonable man would not attempt it.

It is next urged that the petition is insufficient in that it fails to allege that the motorman knew or should have known where plaintiff was at the time the order to back the car six inches very slowly was given. The petition, however, stated facts which, if true, show that the motorman knew where he was, and the evidence was that he could see plaintiff between the cars while the latter was standing up. It also shows that the motorman knew he was adjusting the coupling. The method by which the cars were coupled set forth in the petition showed, as did other allegations of the petition, that plaintiff had to be between the ends of the cars when the motor car was being backed, consequently the

motorman necessarily knew plaintiff's position well enough to render it negligent in him to start the car back slowly and then instantly release the air and allow the car to come back violently with a crash buckling the drawbars and bringing the two cars close together.

The claim that there is no evidence to show any negligence on the part of the motorman is untenable. The evidence showed that the motorman thought plaintiff was adjusting the coupling, that he knew the method of doing it was to stoop over and do it as plaintiff had said; and there was ample evidence from which the jury could find that instead of waiting for the order to throw off the *power,* the motorman negligently released the *brakes,* letting the car come suddenly, unexpectedly, and violently back against the other car.

Error is claimed in the examination of the medical witnesses. The information sought to be elicited was whether a bruised and sore condition of the chest and lungs such as the doctor testified he found, would in his opinion render the lung more susceptible to the disease of tuberculosis. Where the expert witness was testifying from his own knowledge of the physical conditions and had stated what those were, it was wholly unnecessary to incorporate in the question the evidence as to how that condition was brought about. The ultimate question under investigation was, not what caused the sore and bruised condition, but whether tuberculosis had resulted from a bruised condition which was shown to exist from being crushed whether it happened as plaintiff said it did or as defendant contended. Now the question asked Dr. Hollis was not whether tuberculosis did in fact arise in this lung as a result of the bruise and injury to the chest. If that had been the question, then its asking would have been error even though the doctor stated that it was only "in his opinion" that it did. The question asked was whether or not a bruised and mangled lung is rendered more susceptible to the disease of tuberculosis. That is, is or is

it not more likely that a bruised and wounded lung will contract tuberculosis than an uninjured one? Such a question goes no further than to bear on what may, or is likely to, result from the condition shown. It is on a subject within the domain of expert medical knowledge, and does not invade the province of the jury since they are still left free to say whether or not the bruised condition did result in tuberculosis. The questions propounded to the experts did not ask them if they attributed plaintiff's present tubercular condition to the injury. Consequently, they did not invade the province of the jury. There was no error in the examination of these witnesses.

An objection to one of them is that it assumed that the lung was sore and inflamed when there was no evidence that such was the case. But in our opinion there was.

The plaintiff asked but one instruction and that was on the measure of damages. Two errors are claimed in this regard. One, that by this method the jury is left to guess at the theory upon which plaintiff seeks to recover and does not know what particular act of negligence plaintiff is charging against defendant. As to the practice of asking but one instruction, and that only on the measure of damages, it is true that in the case of Eversole v. Wabash Railroad, 249 Mo. 523, l. c. 529 and 532, Judge GRAVES says such practise should be condemned, and that "there should in all cases be at least one principal instruction outlining to the jury the theory under the petition upon which recovery is sought. The jury should not be left to gather the theory of recovery from the petition, aided solely by a formal instruction upon the measure of damages. Nor should counsel cast the burden upon the trial judge to draw such an instruction." But the learned judge, while saying such practise is to be condemned, did not reverse and remand the case upon that ground, nor are we aware of a case where that has been done. The

writer agrees with the view that such practice ought not to be permitted, at least in cases where specific negligence is charged in the petition. The rule is that one cannot charge a specific act of negligence in the petition and recover upon an act of negligence shown but not charged. But under the practice of asking merely one instruction, and that solely on the measure of damages, the jury are permitted to find a verdict for plaintiff for any negligence shown by the evidence whether specified in the petition or not. And the defendant cannot be, and ought not to be, required to furnish instructions as to negligence not specified in the petition, or to call attention to any other negligence by asking an instruction telling the jury they must not consider any negligence not specified by the petition. But however this may be, it has been so long heretofore held, without qualification, that a plaintiff is not required to ask any instructions upon the question of negligence or contributory negligence, that until the Supreme Court says such practise is error and that a case should be reversed and remanded for that reason, we will not do so ourselves. In Morgan v. Mulhall, 214 Mo. 451, l. c. 462-4, the Supreme Court, in very strong and forceful language, held that "nondirection, where specified direction is not requested, is no ground of new trial unless it produce a verdict against the evidence," and that "to question that general rule in Missouri at this late day would be to spin cobwebs before the eyes of justice and mischievously unsettle the law." It is true, in that case, the petition merely charged general negligence without particular specification of the act constituting it. But in Wilson v. Kansas City Southern Ry., 122 Mo. App. 667, l. c. 672, upon the authority of a long list of cases cited therein, from Drury v. White, 10 Mo. 354, down, the rule above announced is upheld and mere nondirection is declared not to be error.

The other objection to plaintiff's instruction is that it is a peremptory instruction to find for plaintiff re-

gardless of whether they found the motorman was negligent. The instruction reads: "If you find for plaintiff you shall assess his damages at such sum as you may find from the evidence will be a reasonable money compensation to the plaintiff for the injuries, if any you find, *that plaintiff received as a direct result of being caught between defendant's cars,*" etc. In Menhardt v. Midland, etc. Cold Storage Co., 163 Mo. App. 278, l. c. 283, an instruction identical with the one at bar was held erroneous because it was substantially a direction to find for plaintiff if he was injured as a direct result of the injurious occurrence without regard to whether it occurred through the negligence of the defendant, that is, it "altogether eliminated the question of defendant's negligence," and was also contradictory of the instruction of defendant which required the jury to find that defendant was guilty of the negligence charged. On the authority of that case, the instruction now before us must be held erroneous unless the former case is to be overruled as not being founded on reason and sound judgment. We cannot say that decision should be condemned or overruled. Consequently, the judgment must be reversed and the cause remanded for a new trial on account of this error. It is so ordered. The other judges concur.