Sewall, C. J.
Two years since this plaintiff had a decision of this Court in his favor, having recovered in an action against the Union Insurance Company upon a policy for the same vessel, voyage, and risk. The loss averred and proved in that action was the same as that upon which his present action and demand arises against the' New England Insurance Company. In both the policies, contracts of insurance, for a term not exceeding twenty-four months from the date of the policy, are expressed. The policy in the case now before us being dated on the 6th of June, 1807, the term of insurance had elapsed before the 7th of June, 1809, when the vessel and cargo were condemned in the British Vice-Admiralty at Calcutta ; whereas, in the former case, the policy bearing date on the 9th of June, 1807, the term of insurance had not elapsed at the condemnation of the property insured.
If we adhere to the former decision, the only question now to be considered is, whether a total loss is proved to have happened within the term of time during which the cargo was protected by this policy, for the sum thereby insured.
The loss averred and proved is a loss by capture. The plaintiff contends that this must be considered as having happened, to all the purposes of this inquiry, when the vessel and cargo were seized and forcibly taken from the possession of the owners by the commander of the British frigate Dover.
This event was a loss constructively total at its commencement. The property remained specifically, and had not been taken out of the course of the voyage insured until more than a month after the capture. But on the 5th of February, 1809, when the captors of the Jenny left the coast of China with that vessel and her cargo, to carry them to * Calcutta, and when this property [ * 4 ] was afterwards condemned there in the Admiralty Court, as lawful prize to the captors, these subsequent events were aggravations of the capture. The departure from the coast of China, the arrival at Calcutta, and the condemnation there, — facts tending to prove a total loss,—are to be severally referred to the capture on that coast, when the property of the assured became subject to the control of the captors.
*12 The insured was first informed of the capture on the 5th of June. 1809, and according to the information then received, the vessel and cargo, although in tire power of the captors, remained at her place of destination, or nearly there, and he did not abandon. It was then uncertain whether the voyage insured had been permanently interrupted. The assured may be considered as having elected not to abandon upon that state of the intelligence; and no one doubts that he had a right so to elect, (a)
But the defendants in the case at bar contend that, after this election, no subsequent intelligence respecting the events and consequences of that capture could operate to entitle the assured to abandon as for a total loss then incurred; or, at least, that the condemnation at Calcutta, which happened after the term of insurance within this policy had elapsed, could not have the effect of entitling the assured to abandon for a loss by capture, referring, for proof of the loss, to the seizure of the ship Jenny by the frigate Dover. If the forcible taking of the property from the assured constitutes the loss, then their delay to abandon after intelligence of that event, or their election then not to abandon, determined the right of the assured to abandon for that cause ; and if the assured depends upon the condemnation at Calcutta to reinstate him in his right to abandon, that event having happened after this policy was determined by lapse of time, the loss was not total, as it respected the claims of the assured upon these defendants at the termination of their risk.
This argument is too refined, too abstract in its principles, [ * 5 ] to be of any practical utility. Let it be supposed that * the plaintiff is not entitled, or has not since elected, to demand a total loss; and that the question now made was of the amount of a partial loss recoverable on this insurance, under circumstances in all other respects the same as are now proved in the case at bar. Proof of the capture wquld maintain his demand for all the losses and damages sustained in consequence, all the immediate and direct consequences of the capture, and of the control thereby taken of the property of the assured. Among these must be reckoned the condemnation and sale at Calcutta; for it will not be pretended, I presume, that the assured would be restricted, in their evidence, to events preceding the 6th of June, 1809, in proving a partial loss by capture.
It is, then, evident that the condemnation and sale at Calcutta are parts of the same loss, which commenced and was incurred when the property insured was captured on the coast of China; *13 and the question now to be determined is in all respects the same as the question determined in the action upon the other policy, where the Union Insurance Company were charged with a total loss That determination was upon the ground that the loss, constructively total at its incipient state, according to the first intelligence, continued total by consequences which are necessarily to be referred to the same disaster.
The rule recognized in several decisions, (2) and never controverted, that I know of, that the insured has the right of abandoning so long as the loss continues total, applies in the case at bar. (a) That the plaintiff did not abandon upon the first intelligence, was favorable to the insurers. His delay has not operated to their prejudice. The intelligence upon which he finally abandoned left the vessel and cargo in the possession of the captors: the voyage was then lost beyond any hope of restoration.
But according to the decision in the case of Mullett vs. Shedden, cited in the argument, an abandonment is not essential to the title of the plaintiff in this case. His loss, after the condemnation and sale, had become actually total * by the entire [ * 6 ] change of property, and inevitable loss of the voyage insured — direct consequences of the capture on the coast of China, (b)
Upon the whole, we have no doubt of the plaintiff’s right to demand a total loss, after abandoning, or offering an account of salvage, upon intelligence of the condemnation and sale of the property insured, notwithstanding his election not to abandon upon the first intelligence. This is agreeable to the decision in the former action. The loss proved in this case is the same in every material circumstance, and the right of the plaintiff to demand as for a total loss upon the policy in the case at bar is the same.

Judgment on the verdict

 A capture gives a right immediately to abandon. —2 Marsh. Ins 568, ed. 3d

 Marsh. 489.

 The notice of abandonment must, be proved to have been given within a rea sonable time after the loss has been heard of, allowing to the insured a convenient opportunity for examining into the circumstances which render abandonment expedient or otherwise. — Reed vs. Bonham, B. & Bingh. 147. — Gernon vs. Royal Ex. Ass. 1 Holt, C. 49. — 6 Taunt. 383 — Mitchell vs. Edis, D. & E. 608. — Barker vs. Blakes, 9 East, 283. — Mellish vs. Andrews, 15 East, 13. —Kelly vs. Walton, 2 Camp 155. —Anderson vs. Royal Ex. Ass. 7 East, 38. — Aldridge vs. Bell, 1 Stark. N. P. C. 498. — Hunt vs Royal Ex. Ass. 5 M. & S. 47. — Hudson vs. Harrison, 3 B. & Bingh. 106 — A delay of three weeks, or a month, or even nine or five days after the insured have received intelligence of a loss, and become acquainted with the state of the property, is unreasonable, and will prevent the insured from afterwards giving notice of abandonment with any effect. — Hughes's Ins. 423.

 Mellish vs. Andrews, 15 East, 13.— Cambridge vs. Anderton, 2 B. & C. 691. — R. & M. 61. — 4 Taunt. 803, 805, 806. — 3 Br. & B. 151.