BOGGS, Appellant, v. PACIFIC STEAM LAUNDRY COMPANY.

Division One, December 24, 1902.

1. **Contract:** VARIED BY VERBAL AGREEMENT: DELIVERY. A party can not recover upon an oral agreement made before a written contract which bars recovery became complete by delivery.

2. ——: ——: ——: SUBSEQUENT PAROL CONTRACT: CASE STATED. Plaintiff had lost his arm while working in defendant's laundry, and afterwards in consideration of a payment to him of his wages of ten dollars a week for two months and a promise by defendant to give him employment whenever it pleased defendant to do so, executed a complete release for all damages, but before that written contract was delivered, the company by parol agreed to pay him $200 and to give him employment for life at $10 per week. The release was delivered after these new terms of settlement and employment were orally agreed to, and the $200 were paid and plaintiff was given employment for about eight years at $10 per week, but was then discharged, and now sues for the 77 weeks which have since intervened. *Held*, that as the oral promise for employment is in direct conflict with the release delivered subsequent to the making of the promise, plaintiff can not recover, the rule of law being that evidence of a contemporaneous or prior parol agreement is inadmissible to contradict or vary the terms of a valid written instrument. Inasmuch as the written agreement became complete by delivery after the oral agreement was made, the written agreement abrogates the prior oral agreement. But had the petition charged that the written agreement was completely entered into but was changed by a subsequent oral agreement, it would have stated a cause of action.

Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT AFFIRMED.

*J. F. Merryman* for appellant.

Oral contracts for life have been upheld by the appellate courts of Missouri in the following cases: Foster v. McO'Blenis, 18 Mo. 88. This cause quoted with

approval by PHILLIPS, J., in Winters v. Cherry, 78 Mo. 344; Self v. Cordell, 45 Mo. 345; Blanton v. Knox, 3 Mo. 342; Suggett's Admr. v. Cason's Admr., 26 Mo. 221; Harrington v. K. C. Cable Co., 60 Mo. App. 223.

*R. E. Rombauer* for respondent.

MARSHALL, J.—This case was certified to this court by the St. Louis Court of Appeals, under section 6 of the amendment of 1884 to article 6 of the Constitution, because one of the judges of that court deemed the decision contrary to previous decisions of this court and of the Kansas City Court of Appeals, and it is made the duty of this court, by the provision of the Constitution quoted, to rehear and determine the case, as in case of jurisdiction obtained by ordinary appellate process.

The petition alleges that for two years prior to December 8, 1888, the plaintiff was employed by the defendant; that on December 8, 1888, while so employed, plaintiff's arm was wrenched off by a wringer which plaintiff was operating; that on December 13, 1888, defendant obtained the following release from the plaintiff:

"Whereas Howard Boggs of the city of St. Louis, while in the employment of the Pacific Steam Laundry, a corporation of the State of Missouri, did at the laundry of said company, No. 515 Elm street, in said city, on the 8th day of December, 1888, lose his hand and a part of his arm by his careless and negligent use of a wringer, of which he had full charge and control, and, whereas, said Boggs does by these presents confess his negligence aforesaid, and that said accident was due entirely to his own fault, and not in any degree to the fault of said company, or of its machinery, or other servants, now, in consideration of the premises, and of the agreement of said Howard Boggs, hereinafter set forth, and his former faithfulness in the discharge of the duties committed to him, the said company does

hereby agree to pay said Boggs his wages for a period of two months notwithstanding his incapacity to work, that is, the sum of $10 per week for two months from and after the 8th day of December, aforesaid, and thereafter to give him employment suitable to his condition for such time, and at such wages as may be agreeable to said company; it being distinctly understood by said Boggs that the above understanding with said company does not involve a confession of any liability whatever of said company to him on account of the accident aforesaid, which accident is hereby confessed to have been due to his own carelessness, and to nothing else. It is further understood that nothing herein shall be construed to require said company to retain said Boggs in its employment longer than it may please them to so retain him from and after the expiration of the two months aforesaid.

"And the said Howard Boggs, in consideration of the premises and of the promise of said company, does hereby release said company from any further claim or demand, whether of right or not, against said company on account of the accident and injuries aforesaid, or of any injuries resulting therefrom, and freely and voluntarily confesses that said accident was due to his own carelessness, and in no degree or manner whatsoever to the negligence or default of said company.

"In witness whereof the parties aforesaid have hereunto set their hands and seals this 13th day of December, 1888.

"Howard Boggs (his mark)        (Seal.)
"Pacific Steam Laundry Co.        (Seal.)

"The undersigned witness that the foregoing agreement was freely and voluntarily signed by Howard Boggs and said company, and that said Boggs was able to sign the same and to understand the contents thereof, which were read to him.

"C. B. Wickes.
"Mrs. Eliza B. Lewis.
"Henry Griffin."

The petition then avers that the said paper is in the defendant's possession, and then contains these further averments: "That while he signed said release on the 13th day of December, 1888, it was not delivered by him to the defendant until the 9th day of April, 1889, on which last-named date plaintiff states that defendant, by Wickes, its agent and superintendent, acting within the scope of his authority, made this proposition to him, to-wit: That defendant would pay plaintiff the sum of two hundred dollars, and, as an additional consideration, would agree to give plaintiff employment for life at the rate of ten dollars per week, providing he would deliver up the aforesaid release to them, and enter into their employment for life, and not bring any suit for the damages he had sustained by reason of his injury while in their employ on the 8th day of December, 1888.

"Plaintiff states that he accepted the proposition made by the defendant, through Wickes, its agent and superintendent, and acting within the scope of his authority, as aforesaid, and that thereupon defendant, by Wickes, its agent aforesaid, paid him two hundred dollars, and on the said 9th day of April, 1889, plaintiff entered the service of defendant under the terms of the contract made by the defendant through Wickes, its agent and superintendent, acting within the scope of his authority, as aforesaid, and that in all things he faithfully complied with the terms of said contract on his part under the direction of the superintendent and general manager of defendant; and plaintiff further states that on said 9th day of April, 1889, he was assigned by said Wickes, agent and superintendent as aforesaid, to the duties as a washer in defendant's said employ, and continued in such capacity for about two years thereafter, when defendant, acting through its manager and general superintendent, changed the duties of said plaintiff from washer to that of night watchman, and that he continued in the latter capacity always faithfully complying with the terms of the contract on his part, until on or about the 7th day of August, 1897, when he was wrongfully discharged by defendant, and

since said time defendant has refused to give him any employment whatever or to pay him the sum of ten dollars per week or any part of said sum."

The petition then alleges an inability to earn anything substantial and prays judgment for seventy-seven weeks at ten dollars a week aggregating seven hundred and seventy dollars.

The answer pleads the written agreement of December 13, 1888.

On the trial of the case the plaintiff was permitted, without objection, to testify in substance to the state of facts set up in the petition. The defendant then moved to exclude all the testimony relating to the oral agreement. The court refused to so rule, and no exception was saved by the defendant to the ruling. The defendant introduced the written agreement, and produced testimony tending to show that there was no oral agreement whatever made with the plaintiff.

At the close of the plaintiff's case, and again at the close of the whole case, the defendant demurred to the evidence and asked a peremptory instruction for the defendant, which the court refused.

The court gave an instruction for the plaintiff predicated upon the case made by the petition and authorizing a verdict for the plaintiff if the jury believed such to be the facts.

The court refused the following instructions asked by the defendant, predicated upon the special defense pleaded:

"3. The court instructs the jury that the law will not permit a person to show by oral evidence that a written contract was delivered upon a different contractual consideration from the one upon which it purports to have been made. That the consideration recited in the contract bearing date December 13, 1888, and offered in evidence, is contractual and the plaintiff can not show, orally, a different consideration or a different employment of him by the defendant than the one shown in said contract.

"5. The court instructs the jury that it stands

admitted that the plaintiff executed and delivered to the defendant the written contract offered in evidence and bearing date December 13, 1888. The jury will therefore disregard all oral evidence tending to show that such contract was different from what the writing recites."

There was a verdict for the plaintiff for $625. The defendant moved for a new trial, and the court sustained the motion, assigning as ground therefor the refusal to give defendant's instructions (the demurrer to the evidence) and the third herein set out. The plaintiff appealed from this order to the St. Louis Court of Appeals, where a majority of that court reversed the judgment of the circuit court, but one of the judges dissenting, the case was certified to this court as above stated.

## I.

The general rule of law is thus stated by Greenleaf on Evidence (16 Ed.), vol. 1, sec. 275: "When parties have deliberately put their engagements in writing, in such terms as to import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected. In other words, as the rule is now more briefly expressed, 'parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.' "

A review of a few of the cases cited in support of the text will show the extent and wisdom of the rule. Preston v. Merceau, 2 Wm. Blackstone, mar. p. 1249, was an action on the case, for rent of a house. The written lease called for twenty-six pounds per annum.

The plaintiff offered to show, by parol evidence, that in addition to the rental reserved in the lease, the tenant had agreed to pay two pounds, twelve shillings and six pence a year as ground rent for the premises. The evidence was excluded, and the plaintiff was nonsuited. On appeal it was argued that such parol evidence did not alter or vary the lease, but simply explained it. The court, per BLACKSTONE, J., said:

"I am clearly of opinion that lord chief justice did right in rejecting this evidence. Courts should be very cautious in admitting any evidence to supply or explain written agreements. Else the statute of frauds would be eluded, and the same uncertainty introduced by supplementary or explanatory evidence, which that statement has suppressed in respect to the principal object. It never ought to be suffered, so as to contradict or explain away an explicit agreement, for that is in effect to vary it. Here is a positive agreement that the tenant shall pay £26. Shall we admit proof that this means £28, 12s., 6d.? What is it to the tenant to whom the rent is to be paid, so long as he is obliged to pay more than his contract expresses? We can neither alter the rent nor the term, the two things expressed in this agreement. With respect to collateral matters it might be otherwise. He might show who is to put the house in repair, or the like, concerning which nothing is said; but he can not by parol evidence shorten the term to fourteen or extend it to twenty-five years, or make the rent other than £26 per annum."

Rich v. Jackson, 4 Brown's Chan. Rep., mar. p. 514, was a bill in equity for a specific performance of contract. The bill stated that the defendant agreed to lease his grantor's devisor, one Stiles, certain premises for a rental of eighty guineas a year for twenty-one years, the defendant to pay all taxes. A memorandum of the agreement was drawn up and signed by Stiles and the defendant. Afterwards the defendant tendered Stiles a lease which required him to pay the taxes. Stiles refused to do so, and demanded a lease "clear

of taxes.'' Stiles died and devised the premises to one Whitehead, who conveyed them to the plaintiff, and he began the action to compel the defendant to execute a lease, ''clear of taxes.'' On the trial the plaintiff offered parol evidence tending to show that the defendant agreed to pay the taxes. Lord Chancellor THURLOW rejected the evidence, and afterwards upon a rule to show cause he said: ''From the evidence, believing the witnesses to speak the truth, it is impossible to mistake the meaning of the parties to be exactly what Mr. Mansfield has stated, that the rent to be paid was meant to be a clear rent; but the parties had concluded the matter by a written agreement, which was, that a lease should be granted for twenty-one years, at a rent of eighty guineas a year, and the tenant paying his twenty guineas a quarter, including in it his land-tax receipt. It can only be according to the sense the law puts upon it. The party died before the payment of any rent, so that the whole matter remains upon the agreement. The court of common pleas rejected the parol evidence very properly. I am satisfied that there is no difference in the case in equity, where the party only comes for a mere formal execution of the agreement. The hardness of the case, under special circumstances, may induce the court to refuse decreeing a performance, or to leave it to the plaintiff's remedy at law; but it is quite impossible to admit the rule of law to be broke in upon; and that requires, that nothing should be added to the written agreement, unless in cases where there is a clear, subsequent and independent agreement, varying the former, but not where it is of matter passing at the same time with the written agreement. (a) The evidence offered here, which I permitted to be read, but which I ought not to have admitted, is all of matter passing at the same time with the written agreement, (b) therefore I must dismiss the bill, but I will do so without costs.''

The language of the text quoted, is taken from the

opinion of PARKER, J., in Stackpole v. Arnold, 11 Mass. l. c. 30.

But as was well said by SHERWOOD, J., in Brown v. Bowen, 90 Mo. l. c. 189, this general rule does not apply where the contract "was verbal and entire, and only a part was reduced to writing. [1 Greenl. on Ev. (16 Ed.), sec. 284 *a;* Rollins v. Claybrook, 22 Mo. 405; Moss v. Green, 41 Mo. 389.] Nor where a distinct, collateral, contemporaneous agreement, independent of, and not varying the written agreement, is offered in evidence, though it relates to the same subject-matter. [Bonney v. Morrill, 57 Mo. 368; Basshor v. Forbes, 36 Md. 154.] Nor does the prohibitory rule apply when a complete contract in writing is entered into, which is subsequently varied by a parol agreement. [Bunce v. Beck, 43 Mo. 266, and cas. cit." See Goss v. Nugent, 5 B. & Ad. 65.]

These seeming exceptions accentuate rather than impair the general rule. For in such instances the written contract is not varied. The first two exceptions noted are consistent with the contract and do not impair anything in it, and the last abrogates but does not vary the contract, which can be done by a *subsequent* parol agreement.

Under which does the case at bar fall, the general rule or the exceptions? The petition alleges the execution of the written agreement on December 13, 1888, but that before it was completed by a delivery to the defendant, the oral agreement was made. The testimony of the plaintiff is to the same effect. The case stated and proved for the plaintiff is an oral agreement made before the written agreement was entered into. It is clearly, then, such a case as Greenleaf on Evidence, in the section quoted, treats of. It is "oral testimony of a previous colloquium between the parties," or oral testimony "of conversations or declarations at the time it was completed," which is rejected because "it would tend in many instances to substitute a new and different contract for the one which was really agreed upon." Such matters are rejected because, *"it is conclusively presumed that the whole engagement of the parties, and*

*the extent and manner of their undertaking was re-
duced to writing.''*

The case made is not one where the agreement was
verbal and entire and only a part was reduced to writ-
ing, nor where the oral agreement relates to an inde-
pendent collateral contemporaneous matter, nor where
a complete contract in writing is afterwards abrogated
by a subsequent parol agreement. For the petition dis-
tinctly charges that the oral agreement was made *be-
fore* the written agreement became complete by de-
livery, and the evidence is to the same effect.

The written and oral agreements are so repugnant
that they can not stand together. Inasmuch as the
plaintiff's case is that the written agreement was made,
that is, became complete by delivery, after the oral
agreement was made, the written agreement abrogates
the prior oral agreement. The case would have been
different if it had been charged and proved that the
written agreement was completely entered into but was
afterwards changed by the oral agreement. That
would have made a case for the plaintiff to go to the
jury on, but as it is, the petition stated no case, and the
testimony made out none. The fact that such testimony
was admitted without objection is of no consequence,
for its legal effect after it was admitted was a question
of law for the court and not a question of fact for the
jury. It showed an oral agreement to employ the plain-
tiff for *life,* and a later, subsequent, written agreement
to employ the plaintiff, not for life, but for only such
a time as it might please the defendant to retain him.
He was employed from April 9, 1889, to August 7, 1897.
It was, therefore, the duty of the court to determine the
legal effect of the subsequent written agreement upon
the prior oral agreement. There was no fact for the
jury to find.

The demurrer to the evidence properly raised this
question of law, as a demurrer to the petition would
have done. The trial court erred, therefore, in refus-
ing to give the peremptory instruction at the close of the
plaintiff's case, and that court acted properly when it

granted a new trial for that reason, *inter alia.* There-
fore, the judgment of the circuit court is affirmed. All
concur.