THE FLANAGAN MILLS & ELEVATOR COMPANY, Respondent, v. GEORGE A. ADAMS GRAIN COMPANY, Appellant.

Kansas City Court of Appeals, December 4, 1905, and January 8, 1906.

1. **CONTRACTS: Evidence: Oral Contract.** Oral communications leading to a written contract are merged in the writing, and the written contract with subsequent written modifications measure the rights of the parties.

2. ———: ———: **Pleading: Jury.** Defendant sold plaintiff six carloads of corn at a fixed price for the official grade. Upon its arrival plaintiff refused to accept the grade and sent its grade to defendant with the proposition to take the off-grades at the market discount for such grades. The defendant accepted, saying, "draw for difference on misgrades." Plaintiff sued on the modified contract and the answer admitting the modified contract charged, "that there were no misgrades in the corn according to the terms of the contract." *Held,* the only issue presented was whether there was a misgrade, and this issue was properly submitted to the jury.

3. ———: **Construction: Misgrade of Corn.** *Held,* that the modified contract did not mean that the true grade was to be ascertained by the official grading.

4. ———: **Evidence: Instruction.** Where a party does not object to the admission of incompetent evidence, it cannot complain of the refusal of instructions withdrawing such evidence from the consideration of the jury.

5. ———: ———: **Incompetent: Effect of.** Though incompetent
evidence may be admitted, the competent evidence may show
as a matter of law that the incompetent evidence is without le-
gal effect; but a party voluntarily permitting the admission of
incompetent evidence cannot ask the reversal because an in-
struction withdrawing the evidence was refused.

Appeal from Jackson Circuit Court.—*Hon. Shannon C.
Douglass,* Judge.

AFFIRMED.

*Sherman & Fletcher* for appellant.

Submitted an argument.

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) By failure to object to the testimony when it
was offered, and by cross-examination in relation to the
same matter, appellant must be held to have waived its
objections thereto. To permit objection in instructions
for the first time would be intolerable practice. Max-
well v. Railway, 85 Mo. 95; Mfg. Co. v. Clay, 53 Mo. App.
412; State v. Hope, 100 Mo. 347; Foster v. Railway, 115
Mo. 165; Hickman v. Green, 123 Mo. 165; State v.
Marcks, 140 Mo. 656; Hollenbeck v. Railway, 141 Mo.
97; State v. Lehman, 175 Mo. 619; Boggs v. Laundry Co.,
86 Mo. App. 616; McVey v. Barker, 92 Mo. App. 498.
(2) A written contract is to be read in the light of sur-
rounding circumstances, and where expressed in short
and incomplete terms all contemporaneous writings are
admissible. It may be modified, superseded or discard-
ed altogether even by an oral agreement. Thompson,
Payne & Co. v. Irwin, Allen & Co., 42 Mo. App. 403;
Lanitz v. King, 93 Mo. 513; Greening v. Steele, 122 Mo.
287; Vastine v. Wyman, 5 Mo. App. 598; Monahan v.
Finn, 13 Mo. App. 585; Brick Co. v. Barr, 76 Mo. App.
380; McClurg v. Whitney, 82 Mo. App. 625; Seed Co. v.
Walt, 94 Mo. App. 77.

ELLISON, J.—Plaintiff, residing at Rich Hill, Missouri, bought of defendant, residing at Kansas City, a lot of corn. The contract of purchase was put in the following writing:

"Kansas City, Mo., Mar. 21, 1903.

"To Flanagan Mills & Ele. Co., Rich Hill, Mo.

"Dear Sirs—We confirm sale to you, per phone, of 5,000 bushels No. 3 or better Wh. Corn at 42 3-8c. Cost and freight Rich Hill, Mo. Rich Hill weights, official grade. Prompt shipment. Demand draft, B. L. attached, via Mo. Pac. Ry. to Rich Hill, direct from point of origin. Yours truly, (Signed) Geo. A. Adams Grain Co."

Stamped across the face of this letter is the word "accepted" and signed by plaintiff. Defendant drew drafts on plaintiff for full price, attached them to bill of lading, and shipped the corn to plaintiff, who examined it, and finding that a considerable portion did not come up to the quality specified in the contract, wrote defendant the following letter:

"Rich Hill, Mo., Apr. 8, 1903.

"Geo. A. Adams Grain Co., Kansas City, Mo.

"Dear Sirs—Your six cars of corn have arrived here and they inspect as follows: car No. 15829, No. 2 white corn; car No. 12343, No. 2 white corn; car No. 14033, No. 3 white corn; car No. 8526, No. 4 white corn, being damp, tough with large percentage of rotten grain; cars No. 9000 and No. 5613, rejected white corn, being sour, soft, tough and damp.

"We will take these off-grade cars on contract at the market discount for such grades and thought it well to report to you so that you could notify your shippers. None of this corn carried the rate which we anticipated from our conversation with you, nor does it pay the rate that is inserted in your invoices. . . . We do not want any of these grades of corn at any price if it can be prevented, as it is very expensive for us to handle

since it is not suitable for milling. Very truly yours, (Signed      Flanagan Mills & Elev. Co.''

Not receiving an answer to this letter, plaintiff, in a few days, again wrote defendant, the letter being as follows:

"We are still without reply to ours of April 8 in regard to the corn shipped by you. We have been expecting that each mail would bring your instructions and in the meantime your cars are still on tracks and accumulating demurrage. We would thank you to write us fully to-day whether you wish us to accept the off-grade corn at market discount, and if you will guarantee to protect us on the loss on account of grades and possible shortages in weights, etc. We enclose copy of our letter April 8th and await your advices."

Upon receipt of that letter, defendant sent the following telegram to plaintiff:

"Kansas City, Mo., April 16, 1903.
"Flanagan M. & E. Co., Rich Hill, Mo.

"Letter received; pay drafts; unload corn and draw on us for shortages if any and market difference on misgrads. (Signed) Geo. A. Adams Grain Company.''

Plaintiff then unloaded the corn, paid the drafts, and demanded of defendant the amount of discrepancy occasioned by that portion of the corn complained of being under the grade agreed upon. Defendant refused payment and this action followed. Plaintiff obtained judgment in the trial court.

The oral communication between the parties, which led to the written contract contained in the letter, were, of course, merged in the writing and were thenceforth of no consequence or importance in the controversy. This written contract was, however, subsequently modified by plaintiff's subsequent letter and defendant's telegram. It is the contract, as thus modified, which plaintiff sues upon, and it, thus modified, must measure the

115 app—35

rights of the parties.   The defendant's refusal to pay was based on plaintiff's not furnishing it with the official grading, which it claimed should be furnished.

Notwithstanding the contract for the sale of the corn, as modified by subsequent negotiations, was admitted by defendant in its answer, yet plaintiff submitted that matter as an issue to the jury.   And notwithstanding the contract was in writing and that its modification was in writing, yet there was introduced into the case, without objection, a mass of oral evidence as to matters transpiring previous to the writings.   Defendant's answer only leaves a single issue in the cause and that is embraced in the following clause immediately following an admission that defendant directed plaintiff to unload the corn and draw on it for market differences on misgrade, to-wit : "but this defendant says that there was no misgrade in the corn according to the terms of the contract." So, then, the contest should have been confined to the question whether there was a misgrade under the terms of the contract. The contract was for official grade and the evidence showed that a certificate of official grading was attached to each bill of lading. In that respect, the contract, as originally made, was fulfilled. But it seems that plaintiff considered that it had a right to inspect and grade and did so, and concluding that there was a misgrade, so informed defendant and refused to pay drafts or accept the corn.   Thereupon, defendant waived the provision for official grading by acquiescing in another mode.   Plaintiff stated in its letter refusing to accept the corn that it had inspected it and gave the grades specifically as to each car.   We will not go so far as to say, when plaintiff gave, in detail, the condition of the corn and defendant replied by the statement that it would pay the difference, that it thereby conclusively accepted plaintiff's statement as true.   But we do say that defendant waived the mode of grading as originally agreed, and left only the question whether the corn was of the quality agreed upon.   And this issue was fully

submitted in plaintiff's instructions. That their instructions, or some of them, included burdens which plaintiff need not have assumed, could only harm it and is not cause for complaint from defendant.

It is, however, suggested by defendant that, when it agreed to pay difference on account of misgrade, it meant that the true grade was to be ascertained by an "official grading." This, we regard as a strained and unreasonable interpretation to give to the telegram considered in connection with plaintiff's letter. So defendant contends, as stated in its answer, that there was no misgrade "according to the terms of the contract." Which must mean that there was no misgrade, since there was an official grading which was the only kind recognized and called for in the contract. But, as already stated, the only natural construction of the contract, as modified, is that such official grading was waived and the grading given by plaintiff, if correct, must be accepted as a compliance with the contract.

Defendant insists that the trial court erred in refusing its instructions three and four, wherein the jury was directed not to consider the oral testimony to which we have already referred. That testimony was not objected to by defendant and it, therefore, cannot complain of the refusal of the instructions. "To allow a party to permit, without objection, the admission of evidence, and for the first time make his objection in instructions would be intolerable practice." [Maxwell v. Railway, 85 Mo. 95; Hollenbeck v. Railway, 141 Mo. 97.] When a party litigant fails to object, he, in effect, concedes the competency of the evidence. If he would object in season, the opposite party might be able to supply proper evidence on the point at issue. It is unfair to let in improper evidence by tacit consent and then, when too late to supply proper evidence, ask that it be excluded by instruction.

However, though improper evidence is admitted without objection, yet, from the whole evidence, it may

be apparent that no case has been made, as a matter of law. That is to say, the competent evidence may, in some cases, show, as a matter of law, that the incompetent evidence is without legal effect. Thus, if there is evidence of a prior oral agreement, admitted without objection, yet other evidence showed that the negotiations ended in a written agreement, which, standing alone, entitled one of the parties to a verdict, the court decides as a matter of law upon the effect of such evidence and should give a peremptory instruction. [Boggs v. Pacific Laundry Co., 171 Mo. 282.] But a party, after voluntarily permitting evidence to be admitted, has no right to ask that a judgment be reversed because the court afterwards refused to exclude such evidence by instruction. In this case, the action is brought on a written contract as modified. That contract is admitted by defendant's answer. The recovery has been had on such contract. The question whether there was a misgrade, as charged by plaintiff and denied by defendant, has been determined by the jury in plaintiff's favor and we do not see any reasonable ground for disturbing the result.

We regard the evidence as to the value of the corn as proper. Many instructions offered by defendant were refused and we think properly. Under the views above expressed, the case was properly submitted and the judgment will be affirmed. All concur.